STATE v. ROLLINS

[231 N.C. App. 451 (2013)]

————————

STATE OF NORTH CAROLINA
v.
RICHARD COLT ROLLINS, Defendant

No. COA13-362

Filed 17 December 2013

**1.  Criminal Law—closure of courtroom during trial—findings of fact—not based solely on evidence presented prior to motion**

The trial court's challenged findings of fact upon remand of a rape case during which the trial court temporarily closed the courtroom to spectators while the prosecuting witness testified were supported by competent evidence. Defendant's argument that the trial court's findings of fact must have been based solely upon the evidence presented prior to the State's motion for closure was without merit.

**2.  Criminal Law—closure of courtroom during trial—sufficient evidence—Waller test**

Defendant's argument in a rape case that the trial court erred by temporarily closing the courtroom to spectators while the prosecuting witness testified was without merit. The uncontested findings of fact along with the challenged findings of fact which the Court of Appeals concluded were supported by competent evidence were sufficient to support the trial court's application of the test set

forth in *Waller v. Georgia*, 467 U.S. 39, and its determination that the limited removal of spectators was permissible in this case.

Appeal by defendant from order and judgments entered on or about 6 September 2012 by Judge C. Philip Ginn in Superior Court, Henderson County. Heard in the Court of Appeals 9 September 2013.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Elizabeth J. Weese, for the State.*

*Paul F. Herzog, for defendant-appellant.*

STROUD, Judge.

Defendant appeals order and judgments allowing the State's motion to exclude spectators from his trial and convicting him of second degree rape, resisting public officer, breaking and/or entering, and second degree kidnapping. For the following reasons, we affirm and find no error.

## I. Background

"[D]efendant was convicted of non-felonious breaking or entering, first degree kidnapping, second degree rape, and resisting a public officer." *State v. Rollins*, ___ N.C. App. ___, 729 S.E.2d 73, 75-76 (2012). The background of this case can be found in this Court's prior opinion at *State v. Rollins*, ___ N.C. App. ___, 729 S.E.2d 73 (2012) ("*Rollins I*"). In *Rollins I*, this Court addressed two issues on appeal, but the only one pertinent to the current appeal was the trial court's closure of the courtroom during the testimony of M.S., the complaining witness. *Rollins I*, ___ N.C. App. ___, 729 S.E.2d 73. In *Rollins I*,

> Defendant argue[d] that the trial court violated his Sixth Amendment right to a public trial when the trial judge temporarily closed the courtroom while M.S. testified concerning the alleged rape perpetrated by defendant without engaging in the four-part test set forth in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed. 2d 31 (1984).

*Id.* at ___, 729 S.E.2d at 76. This Court determined:

> Given the limited closure in the present case and the fact that the trial court did not utilize the *Waller* four-part test, we hold that the proper remedy is to remand this

case for a hearing on the propriety of the closure. The trial court must engage in the four-part *Waller* test and make the appropriate findings of fact regarding the necessity of closure during M.S.'s testimony in an order. If the trial court determines that the trial should not have been closed during M.S.'s testimony, then defendant is entitled to a new trial. If the trial court determines that the trial was properly closed during M.S.'s testimony on remand, then defendant may seek review of the trial court's order by means of an appeal from the judgments that the trial court will enter on remand following the resentencing hearing as set out in the next section of this opinion.

*Id.* at ___, 729 S.E.2d at 79.

On 6 September 2012, upon remand, the trial court entered an order:

[T]he Court determines that the temporary closure of the courtroom during the testimony of the victim is necessary to provide complete, open and uninhibited testimony from the victim which is an overriding interest to the 6th Amendment rights of the Defendant, that there are no reasonable alternatives available to the Court other than to temporarily close the courtroom, that the closure was no broader than necessary to protect the overriding interest, and the above findings advance the interests of justice in this matter.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that based upon the foregoing findings of fact, and after conducting the four-part balancing test as set out in *Waller v. Georgia,* 467 U.S. 39 (1984) that the State's Motion to close the courtroom during the testimony of the victim is hereby ALLOWED.

On or about this same date, the trial court entered judgments convicting defendant for second degree rape, resisting public officer, breaking and/or entering, and second degree kidnapping. Defendant appeals.

## II.  Standard of Review

It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by

> the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Mecklenburg Cnty. v. Simply Fashion Stores, Ltd.*, 208 N.C. App. 664, 668, 704 S.E.2d 48, 52 (2010) (citations and quotation marks omitted).

### III. Findings of Fact

**[1]** Defendant raises several contentions regarding the findings of fact. We address each in turn.

#### A.   Evidence to Support Findings of Fact

Defendant, with admittedly no legal support, contends "that the trial judge ought to place himself back at that point in time in the trial when he heard the State's initial motion, and to consider only those facts he (the trial judge) knew at the time." Essentially, defendant argues that the trial court's findings of fact can be based only upon evidence presented by the State's first eight witnesses, and not on that presented by M.S. or the State's last witness, both of whom testified after the ruling on the State's motion to exclude spectators during M.S.'s testimony. Defendant's argument would require that M.S. be submitted for *voir dire* or direct testimony in support of the State's motion, which would defeat the very purpose of N.C. Gen. Stat. § 15-166, since this would entail calling the very witness the statute seeks to protect to testify in an open courtroom to provide evidence to support the closure of the courtroom. *See* N.C. Gen. Stat. § 15-166 (2011). Thus, in many cases, although not all, the evidence supporting the closure is likely to come from other witnesses who have knowledge of the victim's circumstances and condition and the crime.

We also note that in *Rollins I*, this Court remanded this case for the trial court to make the appropriate findings of fact; this Court did so knowing that M.S. testified only after the trial court had already allowed the State's motion for the spectators to be removed during her testimony and that some of the findings of fact for *Waller* might be based upon evidence presented in her testimony which occurred after the ruling upon the motion. *See Rollins I* at ___, 729 S.E.2d at 77-79. As such, this Court essentially required the trial court to perform a retrospective analysis considering all of the evidence due to the trial court's failure to address the *Waller* factors specifically during the trial.

Defendant argues that a retrospective determination of the findings of fact based upon evidence presented both before and after the State's

motion is "unfair." Defendant has not presented any legal authority which would prevent a retrospective analysis, and we have found none. Although we would agree that the burden is upon the State to present sufficient evidence, either in its case in chief or by *voir dire*,[1] to permit the trial court to satisfy the *Waller* test, we specifically do not adopt any particular requirements as to how this presentation of evidence must be made, as it is not necessary under the facts before us. Although some of the trial court's findings of fact may be based upon evidence presented after the State's motion, there was evidence to support several of the trial court's findings of fact presented prior to the State's motion. Eight witnesses had testified prior to the State's motion, and below we will address the evidence from these witnesses which would support the challenged findings of fact. Accordingly, defendant's argument that the trial court's findings of fact must be based solely upon the evidence presented prior to the State's motion for closure is without merit, where there was sufficient evidence to support many of the findings of fact presented prior to the State's motion.

B.  Mislabeled Findings of Fact

Defendant further contends that findings of fact 4, 13, 14, 16, and 18 are actually conclusions of law. "Findings of fact that are essentially conclusions of law will be treated as such upon review. *Wachacha v. Wachacha*, 38 N.C. App. 504, 248 S.E.2d 375 (1978)." *State v. Rogers*, 52 N.C. App. 676, 681-82, 279 S.E.2d 881, 885 (1981). However, defendant's arguments do not specifically challenge these "conclusions of law" beyond noting that they are mislabeled.

C.  Challenged Findings of Fact

Defendant contends that the trial court's findings of fact 7, 9, 10, 11, 12, and 15 were unsupported by the evidence. We disagree. Finding of fact 7 states, "The particular circumstances of this case involved common church attendance and involvement of the victim and defendant, and includes additional issues of moral guilt imposed on the victim because of prior consensual sexual acts with Defendant[.]" The State's first witness, Mr. Thomas Sitler, was a fellow church member of M.S. and defendant and testified that M.S. and defendant socialized at church activities and that the church was opposed to sexual relations outside of marriage. M.S. also testified that she met defendant at church camp, saw

---

1. As noted above, *voir dire* of the prosecuting witness may, in a particular case, defeat the purpose of North Carolina General Statute § 15-166, and this determination must be made on a case-by-case basis by the trial judge.

him at church, and eventually entered into a consensual sexual relationship with defendant wherein she "felt uncomfortable with [her] convictions" because "it just [went] against what [she] fe[lt] as far as right and wrong outside of marriage."

Defendant also challenges finding of fact 9, which stated, "The victim intended to continue to be an active member of her Seventh Day Adventist Church[.]" The evidence supports this finding also. Mr. Sitler testified that he had known M.S. as a church member for eight years at the time of the incident, indicating she had an extensive history with the church. M.S. also testified that she "grew up in this church" and had been a member for approximately 15 years. M.S.'s testimony indicated that her church was a large part of her past and nothing indicated that this would change.

Finding of fact 10 stated, "There existed a particular fragile mental and emotional state of the victim due to the circumstances of the crime[.]" Although we agree with defendant that evidence of the victim's condition at the time of the rape is not necessarily sufficient to support a finding as to her "mental and emotional" state at a trial which may occur years later, we do find it to be some relevant evidence which the trial court may properly consider. In this case, a deputy who arrived at the scene to assist M.S. testified M.S. "was shaking uncontrollably, crying, she was hysterically screaming and she was nude." The deputy had difficulty getting the pertinent facts from M.S. because

> [s]he could not calm down enough for me to be able to get that information out of her. It was extremely chaotic. Whenever she would attempt to calm down and I was trying to get her clothed and she would attempt to calm down, she would come out of the closet, she would see the bedroom and then she would again become uncontrollably shaking and crying and it was hard to console her.

Later, when M.S.'s repeated bouts of "sobbing" remitted enough that she was able to provide more information to the deputy, she told her that prior to the incident which led to his arrest, defendant had been stalking her, was going to kill her, had tried to force himself on her, and she had once found him in the crawl space of her home. M.S.'s condition at the time of the rape and defendant's pattern of behavior leading up to it could certainly affect her "mental and emotional state" long after the event.

Furthermore, this type of finding of fact is one that the trial court is particularly well-qualified to make, and one that we are not well-qualified

to question. The trial judge had the opportunity to observe M.S., defendant, and the other witnesses during the trial, including M.S.'s demeanor during the State's evidence up to the point of the State's motion. Observations of this sort are something that cannot be captured in a written transcript but are crucial in this particular determination. Given the other findings of fact made by the trial court regarding the graphic nature of defendant's crime, M.S.'s accompanying moral guilt, and the circumstances of their mutual church attendance, there was evidence upon which to base this ultimate finding of fact that M.S. was in a fragile mental and emotional state. *See generally Woodard v. Mordecai*, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951) ("Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law." (citations omitted)).

Finding of fact 11 was that, "There were less [sic] tha[n] 6 spectators removed from the courtroom and only church members were excused, with the exception of the counselor for the victim[.]" While the transcript does not reflect how many people were excluded, the trial court did discuss with counsel whether "support people" for either M.S. or defendant would be permitted to remain, ultimately ruling that he would not permit anyone to remain for either side. Defendant has not directed us to any evidence that contradicts this finding of fact by the trial court. The trial court's own observations can serve as the basis of a finding of fact as to facts which are readily ascertainable by the trial court's observations of its own courtroom. *See generally State v. McRae*, 163 N.C. App. 359, 367, 594 S.E.2d 71, 77 ("[T]he trial judge did not err in making his finding of fact no. 8 referring to his observations as judge where the reference to his observations were only used to corroborate the undisputed facts in the record."), *disc. review denied and appeal dismissed*, 358 N.C. 548, 599 S.E.2d 911 (2004). In addition, as discussed in more detail below as to finding of fact 12, the trial court would have had knowledge of the identities of those present based upon the identification of witnesses and others in the courtroom during jury selection.

Finding of fact 12 stated, "The parties excluded by the Court had no actual knowledge of the specific acts committed by the Defendant that led to the particular charges before the Court[.]" Defendant is correct

that the record does not identify each person present or what knowledge each might have had, but it is apparent from the record that the trial court was aware of the general positions of those present. Although the actual *voir dire* of the jury was not recorded, the trial court's introduction of the case to the potential jurors and identification of potential witnesses, counsel, and members of the district attorney's office who may be present during the trial was in the record. Furthermore, the trial judge was on the bench watching the entire courtroom during jury selection, opening statements, and the first eight witnesses, so the trial court would have substantial knowledge regarding those present in the courtroom at the time the State's motion was made.

Lastly, finding of fact 15 stated, "No one from the media was present nor sought admission into the proceedings to advance an interest in being present for the testimony[.]" Again, as noted above, at this point in the trial, the trial court would have been well aware of who was present in the courtroom. Certainly no media representative requested on the record to remain in the courtroom. This finding of fact was also based upon the trial Judge's observations of his own courtroom. Accordingly, we conclude that all of the challenged findings of fact were supported by competent evidence before the trial court.

D.   *Waller* Test

Finally, defendant "contends that there is insufficient evidence before the trial court to support element number (1) of the *Waller* test[.]" As defendant is actually challenging a conclusion of law, that the elements of *Waller* have not been met, we will address this contention below.

## IV.  Trial Court's Determination

[2]  Defendant next presents a broad argument that generally challenges the trial court's ultimate determination to exclude spectators from the courtroom. Essentially defendant requests that we reweigh the evidence before the trial court. North Carolina General Statute § 15-166 provides,

> In the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case.

N.C. Gen. Stat. § 15-166. In *Rollins I*, this Court stated,

while N.C. Gen. Stat. § 15–166 permits the trial court to close the courtroom during a rape victim's testimony, the trial court must balance the interests of the prosecutor with the defendant's constitutional right to a public trial. The Supreme Court in *Waller* set forth the following four-part test that the trial court must engage in while balancing these competing interests: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

This Court has recognized the applicability of the *Waller* test when allowing a courtroom closure pursuant to N.C. Gen. Stat. § 15–166.

*Rollins I*, ___ N.C. App. at ___, 729 S.E.2d at 77 (citations and quotation marks omitted). The trial court found either uncontested or upon competent evidence:

1) The testimony of the victim involved matters of personal, delicate sexual nature;

2) The testimony of the victim involved forceful intercourse without the consent of the witness;

3) The testimony of the victim was of a graphic sexual nature making it uncomfortable for the witness to discuss openly;

4) The interests of justice require candid, honest and complete testimony from witnesses uninhibited by outside influences such as spectators in the courtroom;

5) The victim is an active member of the Seventh Day Adventist Church and has been for many years;

6) The defendant and witness met at a "camp meeting" and began to know each other through a singles group at her church, the Seventh Day Adventist Church, after the defendant was released from prison and brought into the church by the church's ministry;

7) The particular circumstances of this case involved common church attendance and involvement of the victim

and defendant, and includes additional issues of moral guilt imposed on the victim because of prior consensual sexual acts with Defendant;

8) The nature of the relationship between the defendant and witness and her efforts to end the relationship was the subject of the victim's testimony;

9) The victim intended to continue to be an active member of her Seventh Day Adventist Church;

10) There existed a particular fragile mental and emotional state of the victim due to the circumstances of the crime;

11) There were less tha[n] 6 spectators removed from the courtroom and only church members were excused, with the exception of the counselor for the victim;

12) The parties excluded by the Court had no actual knowledge of the specific acts committed by the Defendant that led to the particular charges before the Court;

13) A chilling effect on the completeness and opened of the victim's testimony is likely to occur if she feels overly embarrassed, emotional or intimidated by the presence of fellow church members during her testimony;

14) That in closing the courtroom, the victim will be less inhibited in testifying completely and the "chilling effect" will be reduced;

15) No one from the media was present nor sought admission into the proceedings to advance an interest in being present for the testimony;

16) *The overriding interest in providing an environment for truthful testimony of the victim would be prejudiced by allowing spectators during her testimony;*

17) *That the courtroom would be closed temporarily, only during the testimony of the victim, and there are many other witnesses whose testimony is open to the public;*

18) *That no reasonable alternatives to closing the courtroom during the victim's testimony exist.*

**STATE v. ROLLINS**

[231 N.C. App. 451 (2013)]

(Emphasis added.) We conclude that these uncontested findings of fact, *see Peters v. Pennington,* 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011) ("Unchallenged findings of fact are binding on appeal."), along with the contested findings of fact which we have already determined were supported by competent evidence, are sufficient to support the trial court's application of the *Waller* test as required by this Court in *Rollins I. Rollins I,* ___ N.C. App. at ___, 729 S.E.2d at 79.

Although it is possible that other findings of fact could have been made or that other conclusions could have been·drawn weighing the factors more in defendant's favor does not mean that the trial court erred. The trial court's findings of fact support its determination that the limited removal of spectators should be permitted in this case.[2] As such, this argument is overruled.

### V. Conclusion

For the foregoing reasons, we affirm and find no error.

AFFIRMED and NO ERROR.

Chief Judge MARTIN and Judge GEER concur.

---

2. We again note that the courtroom was closed only for the testimony of M.S. and was open for the testimony of the other 12 witnesses and all other proceedings during the trial.