STATE OF NORTH CAROLINA v. TANNA BARNARD SAKOBIE

No. COA03-1406

(Filed 20 July 2004)

**Kidnapping— first-degree—minor—sex offender registration**

The trial court did not err in a first-degree kidnapping of a minor case by entering an amended judgment mandating that defendant be required upon release from the Department of Correction to register pursuant to the Sex Offender and Public Protection Registration Program under Article 27A, because: (1) registration pursuant to Article 27A is not a form of punishment unauthorized by Article XI, Section 1 of the North Carolina Constitution when Article 27A is a civil rather than a criminal remedy; (2) even though defendant contends the kidnapping was in furtherance of larceny of a vehicle, N.C.G.S. § 14-208.6(1i) provides that an offense against a minor includes kidnapping pursuant to N.C.G.S. § 14-39; (3) defendant's separate asportation or movement of the child was unnecessary to complete the offense of larceny of the vehicle as defendant already had pos-

**STATE v. SAKOBIE**

[165 N.C. App. 447 (2004)]

session of the vehicle; and (4) based on the language of the indictment and the fact that defendant was found guilty of the crime for which she was indicted, it is unnecessary to remand the case for a specific finding concerning whether the kidnapping involved a minor.

Appeal by defendant from an amended judgment dated 10 July 2003 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 9 June 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Ashby T. Ray, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

BRYANT, Judge.

Tanna Barnard Sakobie (defendant) appeals an amended judgment dated 10 July 2003 mandating defendant be required upon release from the Department of Correction to register pursuant to the Sex Offender and Public Protection Registration Programs (Article 27A).

The evidence presented by the State at the underlying trial tended to show the following: On 4 October 2000 at approximately 9:00 p.m., Joi Rivers drove to a convenience store in her Chevrolet Cavalier to purchase soft drinks. Rivers' five-year-old son was a passenger in the vehicle. When Rivers stopped at the convenience store, she left her child in the front seat with the vehicle's engine running. While Rivers was inside the convenience store, defendant jumped into Rivers' vehicle and drove away with the child still sitting in the front seat. When Rivers reached the store counter to pay for her soft drinks, she did not see her parked vehicle and ran outside to discover both her vehicle and child were gone. Rivers began to scream and cry, and she went back into the convenience store. The store clerk telephoned the police.

Defendant drove approximately six and a half miles to another convenience store where she exited the vehicle, pulled the child out of the vehicle, and forced him into the convenience store with her. Defendant told the child to stand at the counter and remain quiet. The child stayed at the counter, although crying, while defendant purchased a forty-ounce bottle of malt liquor. Defendant then grabbed the child's arm, pulling him out of the convenience store.

STATE v. SAKOBIE

[165 N.C. App. 447 (2004)]

Defendant then drove to a mobile home, leaving the child in the vehicle while she obtained a bag from the occupants. Defendant then drove more than 12 miles into the countryside to the home of her friend Robert Johnson (Johnson). Several other individuals were also present on the premises on her arrival. Defendant went inside the mobile home to drink wine, again leaving the child outside in the vehicle for at least five to ten minutes.

The child was crying and told Johnson he wanted to go where his mother was located. When defendant came out of the mobile home, Johnson said he would go with defendant to return the child to the child's mother. Defendant, however, refused Johnson's offer and drove off with the child.

Around midnight, defendant drove approximately 4 miles to a mobile home where Vicky Ray (Ray) and Jerome Leak lived. The mobile home was in a rural area with only one trailer behind it and a house across the street. Ray's mobile home was approximately 12 miles from the convenience store where the vehicle was initially taken and the child abducted.

The lights were on inside the Ray's mobile home. Defendant parked twenty feet from the backdoor of the mobile home and told the child his mother was inside; however, the child responded that his mother did not visit trailers. Defendant thereafter unlocked the child's door and pushed him out of the vehicle. Able to hear a barking dog and feeling scared, the child nevertheless went to the backdoor of the mobile home and knocked. Defendant drove away while the child was knocking at the door.

Upon opening her door, Ray found the child standing before her who repeatedly asked for his mother. Ray also observed a car turning out onto the main road. Because of cold weather conditions, Ray told the child to come inside her home. As Ray did not own a telephone or a vehicle and there were no other telephones within miles of the mobile home, she put the child to bed on her couch. Also, Ray told the child she would try to return him to his mother the following morning. Defendant meanwhile returned to Johnson's residence where she continued to drink.

At 2:45 a.m., Officer Garrett Gwin of the Hope Mills Police Department spotted defendant driving Rivers' vehicle. Officer Gwin stopped the vehicle and took the defendant into custody. On discovering the child was not in the vehicle, an extensive search for the

child was initiated. Defendant initially lead the officers to many different locations in the search for the child but after an hour, lead the officers to Ray's trailer. The child was located inside the trailer and later returned to his mother.

Defendant was charged with and convicted of first-degree kidnapping, felony larceny of a motor vehicle, and possession of a stolen vehicle. The trial court arrested judgment as to the charge of possession of a stolen vehicle. Defendant was sentenced to 95-125 months imprisonment for first-degree kidnapping and 10-12 months imprisonment suspended with 24 months of supervised probation for felony larceny of a motor vehicle to run consecutively with the sentence of first-degree kidnapping. Defendant appealed her convictions, and this Court found no error as to the trial. *State v. Sakobie,* 157 N.C. App. 275, 579 S.E.2d 125 (2003).

On remand, the Department of Correction (DOC) referred this case to Cumberland County Superior Court for an amendment to the judgment, specifically for defendant to be designated and required upon release to register pursuant to Article 27A. Defendant appeared in open court on 10 July 2003. Over defendant's objection, the trial court found the offense to be a reportable conviction involving a minor pursuant to N.C. Gen. Stat. § 14-208.6 and amended the judgment in accordance therewith. Defendant filed notice of appeal on 18 July 2003.

---

The issues on appeal are whether: (I) requiring a defendant to register pursuant to Article 27A is a form of punishment authorized by Article XI, Section 1 of the North Carolina Constitution; and (II) is unconstitutional as applied to the facts in this case.

### Purpose of Registry

North Carolina enacted Article 27A (N.C. Gen. Stat. § 14-208.5 to .32) in 1995, which requires persons convicted of certain sex-related offenses and offenses against minors to register with law enforcement agencies. *See 1995 N.C. Sess. Laws ch. 545, § 3* (Article 27A applies to all offenders convicted on or after 1 January 1996 and to all prior offenders released from prison on or after that date). The purpose of the Article is to prevent recidivism because "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and . . . protection of the public from sex offenders is of paramount governmental interest." N.C.G.S. § 14-208.5 (2003). In addition, the "General Assembly also

recognizes that persons who commit certain other types of offenses against minors, such as kidnapping, pose significant and unacceptable threats to the public safety and welfare of the children in this State and that the protection of those children is of great governmental interest." *Id.*

Pursuant to N.C. Gen. Stat. § 14-208.7(a), "[a] person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides." N.C.G.S. § 14-208.7(a) (2003). Residents who are released from a correctional institution must register with the sheriff of the county in which the offender resides "[w]ithin 10 days of release," N.C. Gen. Stat. § 14-208.7(a)(1) (2003), and registration must be maintained for ten years thereafter, N.C. Gen. Stat. § 14-208.7(a). A person who violates this requirement is guilty of a Class F felony. N.C.G.S. § 14-208.11 (2003).

I

Defendant contends the trial court erred in designating her as a person required to register pursuant to N.C. Gen. Stat. § 14-208.5 *et seq*, because this form of punishment is not authorized by Article XI, Section 1 of the North Carolina Constitution.[1]

In *State v. White*, 162 N.C. App. 183, 590 S.E.2d 448 (2004), this Court addressed a defendant's contention that the registration requirements provided in Article 27A constituted an *ex post facto* law because the requirements retroactively increased the punishment imposed as a result of his 1996 conviction for indecent liberties with a minor. In *White*, the defendant conceded that the U.S. Supreme Court had considered and rejected most of his arguments in *Smith v. Doe*, 538 U.S. 84, 155 L. Ed. 2d 164 (2003),[2] but argued that North Carolina's registry law could be distinguished from the Alaska statutes analyzed in *Smith*. In reaching the conclusion that North Carolina's statute is not an unconstitutional *ex post facto* law, our Court noted:

---

1. The following punishments only shall be known to the laws of this State: death, imprisonment, fines, suspension of a jail or prison term with or without conditions, restitution, community service, restraints on liberty, work programs, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State.

N.C. Const. art. XI, § 1.

2. *Smith* held that Alaska's sex-offender registration law did not violate the *ex post facto* prohibition of the federal constitution because the law established a civil, non-punitive regulatory regime intended to protect the public.

STATE v. SAKOBIE

[165 N.C. App. 447 (2004)]

We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and non-punitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' "

*White*, 162 N.C. App. at 192, 590 S.E.2d at 454 (alteration in original) (citations omitted). Our Court stated that we must first determine the intended purpose of the law. *White*, 162 N.C. App. at 192, 590 S.E.2d at 454.

If the declared purpose was to enact a civil regulatory scheme, then the court determines whether either the purpose or effect is so punitive as to negate any intent to deem the scheme civil. In making this determination, " 'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.' "

*White*, 162 N.C. App. at 192, 590 S.E.2d at 454 (citations omitted). The *White* Court ultimately concluded that "the legislature did not intend that the provisions of Article 27A be punitive [and] . . . the effects of North Carolina's registration law do not negate the General Assembly's expressed civil intent and that retroactive application of Article 27A does not violate the prohibitions against *ex post facto* laws." *White*, 162 N.C. App. at 194-98, 590 S.E.2d at 455-58.

Having previously determined that Article 27A is a civil and not a criminal remedy, this panel is not at liberty to revisit the issue. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating "where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court"). Accordingly, defendant's argument that registration pursuant to Article 27A is a form of punishment not authorized by Article XI, Section 1 of the North Carolina Constitution must fail. This assignment of error is overruled.

II

Next, defendant argues, as applied to the facts in this case, Article 27A is unconstitutional, and the facts of this case do not support the trial court's designation of defendant's first-degree kidnapping conviction as a reportable conviction.

N.C. Gen. Stat. § 14-208.6(1i) states: " 'Offense against a minor' means any of the following offenses if the offense is committed against a minor, and the person committing the offense is not the minor's parent: G.S. 14-39 (kidnapping), G.S. 14-41 (abduction of children), and G.S. 14-43.3 (felonious restraint)." N.C.G.S. § 14-208.6(1i) (2003). Here, defendant was convicted of first-degree kidnapping pursuant to N.C. Gen. Stat. § 14-39, but urges us to consider her argument that the purpose of the restraint and confinement was for the goal of facilitating the commission of larceny of a vehicle and possession of a stolen vehicle. Defendant further argues that because she committed a "crime of opportunity" in taking the vehicle and did not have an intent to kidnap the child, Article 27A as applied to the facts of her case will not further the goal of requiring registration.

The language of section 14-208.6(1i) is clear and unambiguous: an offense against a minor includes kidnapping pursuant to N.C. Gen. Stat. § 14-39. "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *State v. Cheek*, 339 N.C. 725, 728, 453 S.E.2d 862, 864 (1995).

Although defendant argues that the kidnapping was in furtherance of the larceny of the vehicle, N.C. Gen. Stat. § 14-39 clearly states that a kidnapping occurring during the facilitation of a felony is encompassed in the statute.[3]

Moreover, the facts reveal that after defendant took the vehicle, she drove approximately six and one-half miles to another convenience store, exited the vehicle, pulled the child out of the vehicle, and forced him into the convenience store with her. Defendant told the child to stand at the counter and remain quiet. The child stayed at the counter, although crying, while defendant purchased a forty-ounce bottle of malt liquor. Defendant then grabbed the child by the arm and pulled him back out of the convenience store. This separate asportation or movement of the child was therefore unnecessary to

---

3. Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: . . . Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C.G.S. § 14-39(a)(2) (2003). In the instant case, defendant was convicted of felony larceny of a motor vehicle.

complete the offense of larceny of the vehicle as defendant already had possession of the vehicle.

Defendant argues this Court should remand the case to the trial court for a specific finding that the kidnapping involved a minor, because defendant was convicted of first-degree kidnapping on the theory she failed to release the child in a safe place. Whether a victim is released in a safe place goes to whether a defendant will be found guilty of first or second-degree kidnapping, and not to the underlying elements of kidnapping. N.C.G.S. § 14-39(b) (2003). A defendant will be found guilty of kidnapping if the victim was either over the age of sixteen and did not give consent, or under the age of sixteen and the defendant did not have the consent of the victim's parent. N.C.G.S. § 14-39(a). Here, defendant was indicted for kidnapping the child, who was "a person under the age of sixteen (16) years." Based on the language of the indictment and the fact that defendant was found guilty of the crime for which she was indicted, we find it unnecessary to remand for a specific finding concerning whether the kidnapping involved a minor. The judgment of the trial court is

Affirmed.

Judges TYSON and STEELMAN concur.