TYSON, Judge.
*750 Anthony Rayshon Bethea ("Petitioner") appeals from the trial court's denial of his petition to be removed from the North Carolina Sex Offender Registry. We affirm the trial court's order.
I. Background
On 13 September 2004, Petitioner pled guilty to six counts of felony sexual activity with a student in violation of N.C. Gen. Stat. § 14-27.7(b), upon which the court sentenced Petitioner. This sexual activity with a student offense to which Petitioner pled guilty is now codified under N.C. Gen. Stat. § 14-27.32 (2015).
Following his convictions, Petitioner registered as a sex offender on 14 October 2004 under the North Carolina Sex Offender and Public Protection Registration Program ("the Registry Program"). See N.C. Gen. Stat. § 14-208.7, et. seq (2015) (establishing the North Carolina Sex Offender and Public Protection Registration Program).
Under the version of the Registry Program in effect at the time of his 2004 convictions, Petitioner's requirement to be registered as a sex offender was to automatically terminate after ten years had elapsed, if he did not commit any further offenses requiring registration. N.C. Gen. Stat. § 14-208.12A (2004).
Statutory amendments in 2006 to the Registry Program affected Petitioner's registration status. First, section 14-208.7 was amended to provide that registration of convicted sex offenders could continue beyond ten years, even when the registrant had not re-offended. N.C. Gen. Stat. § 14-208.7(5a) (2007) (providing that the registration requirement "shall be maintained for a period of at least ten years following the date of initial county registration").
Second, the provision of section 14-208.7, which provided for automatic termination of registration, was removed. Section 14-208.12A was added to the Registry Program. The current version of section 14-208.12A provides that persons wishing to terminate their registration requirement must petition the superior court for relief.
(a) Ten years from the date of initial county registration, a person required to register under this Part may petition the superior court to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article.
*751 ...
(a1) The court may grant the relief if:
*679 (1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,
(2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State, and
(3) The court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.
N.C. Gen. Stat. § 14-208.12A (2015), amended by N.C. Sess. Laws 2017-158, § 22 (adding a provision to section 14-208.12A(a) irrelevant to this appeal).
In 2006, Congress enacted the Adam Walsh Act, also known as the Sex Offender Registration and Notification Act ("SORNA"). See 42 U.S.C. § 16901, et seq. The Adam Walsh Act replaced the Jacob Wetterling Act, the prior federal law addressing sex offender registration. This Court has held "[t]he Adam Walsh Act now provides the 'federal standards applicable to the termination of a registration requirement [under N.C. Gen. Stat. § 14-208.12A(a1)(2) ]' and covers substantially the same subject matter as the Jacob Wetterling Act." In re Hamilton , 220 N.C. App. 350, 356, 725 S.E.2d 393, 398 (2012).
SORNA establishes rules governing sex offender registration and conditions state receipt of certain federal funds on a state's implementation of those rules. See 42 U.S.C. §§ 16915, 16925. SORNA utilizes a three-tiered system for classifying sex offenders:
Under SORNA, a tier I sex offender must register for fifteen years, a tier II sex offender must register for twenty-five years, and a tier III sex offender must register for life. However, a tier I sex offender may reduce his or her registration period to ten years by keeping a clean record; likewise, a tier II sex offender may reduce his or her registration period to twenty years. Only a tier III sex offender who is "adjudicated delinquent [as a juvenile] for the offense" may reduce his or her registration period to twenty-five years; otherwise, a tier III sex offender is subject to lifetime registration. See 42 U.S.C.S. § 16915(a), (b) (2013).
*752 In re Hall , 238 N.C. App. 322, 326, 768 S.E.2d 39, 42-43 (2014), appeal dismissed and disc. review denied , --- N.C. ----, 771 S.E.2d 285, cert. denied sub nom Hall v. North Carolina , --- U.S. ----, 136 S.Ct. 688, 193 L.Ed.2d 519 (2015).
In September 2014, Petitioner petitioned the Superior Court of Chatham County to be removed from the sex offender registry. At the hearing on 31 October 2016, Petitioner did not contest his prior offenses qualified him as a tier II offender under SORNA.
The trial court checked off the following findings of fact on the pre-printed form entitled Petition and Order for Termination of Sex Offender Registration, AOC-CR-263, Rev. 12/11:
1. The petitioner was required to register as a sex offender under Part 2 of Article 27A of Chapter 14 of the General Statutes for the offense(s) set out above.
2. The petitioner has been subject to the North Carolina registration requirements of Part 2 of Article 27A for at least ten (10) years beginning with the Date of Initial NC Registration above.
3. Since the Date of Conviction above, the petitioner has not been convicted of any subsequent offense requiring registration under Article 27A of Chapter 14.
4. Since the completion of his/her sentence for the offense(s) set out above, the petitioner has not been arrested for any offense that would require registration under Article 27A of Chapter 14.
5. The petitioner served this petition on the Office of the District Attorney at least three (3) weeks prior to the hearing held on this matter.
6. The petitioner is not a current or potential threat to public safety.
7. The relief requested by the petitioner [does not] comp[ly] with the provisions of the federal Jacob Wetterling Act, 42 U.S.C § 14071, as amended, and any other federal standards applicable to the termination *680 of a registration requirement or required to be met as a condition for the receipt of federal funds by the State.
The court denied Petitioner's petition for relief from registration and removal from the registry. The court concluded Petitioner's requested *753 relief and termination of his duty to register would not comply with "federal standards applicable to the termination of registration requirement required to be met as a condition for receipt of federal funds by the State, based upon ... SORNA[,]" and entered an order thereon.
Petitioner timely appealed from the trial court's denial of his petition.
II. Jurisdiction
Jurisdiction lies in this Court from final judgment of the superior court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2015).
III. Issues
Petitioner argues: (1) the trial court violated his substantive due process rights by denying his petition for termination of sex offender registration after finding that he "is not a current or potential threat to public safety"; and, (2) the retroactive activation of federal sex offender registration standards violates the ex post facto clauses of the federal and state constitutions.
IV. Standard of Review
This Court "reviews conclusions of law pertaining to constitutional matters de novo." State v. Bowditch , 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citations omitted). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks and citation omitted).
V. Analysis
A. Substantive Due Process
Petitioner argues the trial court's denial of his petition for termination of sex offender registration violates his substantive due process rights. He asserts that after the trial court found Petitioner "is not a current or potential threat to public safety[,]" it was arbitrary for the trial court to deny his petition and to require him to continue to register because of the SORNA standards incorporated into state law under section 14-208.12A(a1)(2). We disagree.
Petitioner argues "[t]he State can establish no justification for the arbitrary extension of [his] registration requirement now that he has been judicially determined to be no threat to the public." Petitioner failed to challenge the trial court's findings of fact detailed above. When "the trial court's findings of fact are not challenged on appeal, they *754 are deemed to be supported by competent evidence and are binding on appeal." State v. Roberson , 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004).
1. XIV Amendment and Article I § 19
Pursuant to the Constitution of the United States, "[n]o State shall make or enforce any law which shall ... deprive any person of life, liberty, or property, without due process of law. ..." U.S. Const., amend. XIV, § 1. The North Carolina Constitution provides that "[n]o person shall be ... in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Our Supreme Court has held that "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." Rhyne v. K-Mart Corp. , 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (citation and quotations omitted).
The Due Process Clause provides two types of protection: substantive and procedural due process. See State v. Thompson , 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998).
" 'Substantive due process' protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." Id.
Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in *681 this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.
Washington v. Glucksberg , 521 U.S. 702, 720-21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772, 787-88 (1997) (citations and quotations omitted).
Although the trial court did check or select the box on the pre-printed AOC form finding Petitioner "is not a current or potential threat to public safety[,]" section 14-208.12A(a1) allows a trial court to grant a petition for relief to register and removal from the Registry Program only if:
*755 (1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,
(2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State, and
(3) The court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.
N.C. Gen. Stat. § 14-208.12A(a1) (emphasis supplied).
The statute clearly states that upon a finding that a petitioner does not have a dis-qualifying arrest and is not ineligible for relief under federal law, a trial court is required to find a petitioner is not otherwise a "current or potential threat to public safety" before it can exercise its discretion to grant relief. Here, the trial court determined Petitioner did not have a disqualifying arrest and that he is ineligible for relief under federal law.
Reading the pre-printed "[t]he petitioner is not a current or potential threat to public safety[,]" finding of fact on the AOC form in light of the language of section 14-208.12A, clarifies this finding of fact. The trial court did not find Petitioner is not a current or potential threat to public safety without qualification, rather Petitioner is not otherwise a current or potential threat to public safety beyond his ineligibility for removal from the registry under federal law. The required findings are cumulative and the court's finding in Petitioner's favor on one, some, or even most of the requirements does not reduce Petitioner's burden to show compliance with all requirements.
The incorporation of federal sex offender registration standards into section 14-208.12A(a1)(2) is rationally related to the government purpose of protecting public safety, especially the protection and safety of minors and other victims, from sexual offenders. Even though the trial court found Petitioner "is not otherwise a current or potential threat to public safety," section 14-208.12A identifies and classifies Petitioner as a continuing threat to public safety under federal sex offender standards. See N.C. Gen. Stat. § 14-208.12A(a1)(2). The Congress of the United States enacted SORNA: "In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators ...." 42 U.S.C. § 16901.
*756 Petitioner's assertion that he has "been judicially determined to be no threat to the public" is a threshold finding that is required in the seven listed required findings, in addition to compliance with section 14-208.12A, which limits what the trial court can conclude before it grants his requested relief. See N.C. Gen. Stat. § 14-208.12A.
B. Ex Post Facto
Petitioner next contends the retroactive application of SORNA to section 14-208.12A constitutes an ex post facto violation. We disagree.
The enactment of ex post facto laws is prohibited by both the Constitution of the United States and the North Carolina Constitution. See U.S. Const. art. I, § 10 ("No state shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts ...."); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such *682 laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted."). This prohibition against ex post facto laws applies to:
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.
State v. Wiley , 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (citations and quotation omitted), cert. denied , 537 U.S. 1117, 123 S.Ct. 882, 154 L.Ed. 2d 795 (2003). "Because both the federal and state constitutional ex post facto provisions are evaluated under the same definition, we analyze defendant's state and federal constitutional contentions jointly." Id . (citation omitted).
Petitioner's contention that the retroactive application of SORNA minimum registration periods through section § 14-208.12A(a1)(2) constitutes an ex post facto law was recently addressed by this Court in In re Hall , 238 N.C. App. at 329-33, 768 S.E.2d at 44-46. In Hall , the Court stated:
*757 This Court has held that Article 27A of Chapter 14 [ N.C. Gen. Stat. § 14-208.5 et seq. ] of our North Carolina General Statutes sets forth civil, rather than punitive, remedies and, therefore, does not constitute a violation of ex post facto laws. See [ State v. Williams, 207 N.C. App. 499, 505, 700 S.E.2d 774, 777-78 (2010) ]. Therefore, in light of this Court's prior decisions rejecting the argument that our sex offender registration statutes constitute an ex post facto law, we are bound to say that petitioner's argument lacks merit.
Id. at 332, 768 S.E.2d at 46.
In State v. Sakobie , 165 N.C. App. 447, 598 S.E.2d 615 (2004), this Court held "the legislature did not intend that the provisions of Article 27A [to] be punitive [and] ... the effects of North Carolina's registration law do not negate the General Assembly's expressed civil intent and that retroactive application of Article 27A does not violate the prohibitions against ex post facto laws." 165 N.C. App. at 452, 598 S.E.2d at 618 (citations omitted).
We are bound by the precedents in Hall and Sakobie . "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Petitioner's argument that the extension of his registration period as a sex offender through the incorporation of SORNA federal standards into N.C. Gen. Stat. § 14-208.12A(a1)(2) is overruled.
VI. Conclusion
Petitioner has failed to show any reversible errors in the trial court's order. The order of the trial court is affirmed. It is so ordered .
AFFIRMED.
Judges ELMORE and STROUD concur.